Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 2785 | **DATE** | 11/15/2000 |
| **CASE TITLE** | POOLE vs. SPAGNOLO et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, defendants' motion for summary judgment is granted. Plaintiff's complaint is dismissed with prejudice in its entirety as to all defendants. All other pending motions are moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | NOV 16 2000 | |
| | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | FD-7 FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 00 NOV 16 AM 6: 27 | 11/15/2000 date mailed notice | |
| JS | courtroom deputy's initials | | JS mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA FLAGG POOLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 98 CV 2785 |
| | ) | |
| JOSEPH SPAGNOLO, et. al. | ) | |
| | ) | DOCKETED |
| Defendants. | ) | |
| | ) | NOV 16 2000 |

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Plaintiff Patricia Poole, represented by counsel, filed a six-count complaint against defendants the Illinois State Board of Education ("ISBE") and other individuals, all employees of the ISBE, alleging violation of her constitutional rights under 42 U.S.C. § 1983 (Count I), conspiracy to violate her constitutional rights under 42 U.S.C. § 1985(3) (Count II), common law conspiracy (Count III), race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), et seq. (Count IV), violation of the Americans with Disabilities Act, 42 U.S.C. §12101 ("ADA") (Count V), and violation of the Rehabilitation Act, 29 U.S.C. § 794 (Count VI). Defendants filed a motion for summary judgment and a statement of uncontested facts, as required by Local Rule 56.1(a), on October 2, 2000.

Plaintiff's response to defendant's motion was due on October 23, 2000. As of the date of this opinion, plaintiff has not responded to the motion, nor filed a Local Rule 56.1(b) statement of uncontested facts in response to defendants' statement of uncontested facts. Plaintiff has also not

1

filed a motion requesting an extension of time despite two telephone calls from this court's minute clerk reminding plaintiff's counsel that plaintiff's response was overdue. Based upon the undisputed material facts contained in the record, defendants' motion for summary judgment is GRANTED.

## STATEMENT OF FACTS[1]

In January 1979, the Illinois State Board of Education ("ISBE") hired plaintiff Patricia Flagg Poole, who is African American, to manage their Equal Opportunity Division ("EEO Division"). Plaintiff worked as a manager or a managerial employee of the EEO Division from January 2, 1979 to July 1, 1995. As a manager of the EEO Division, plaintiff's responsibilities included administration of school desegregation regulations, development and administration of the Federal Title IV program to provide technical assistance to schools and communities undergoing desegregation, and supervision of both professional staff and operational staff. During her time as EEO manager, plaintiff was evaluated annually. Plaintiff's evaluations were generally satisfactory or higher, and noted her strengths as well as areas which needed improvement. Plaintiff was not disciplined from 1979 to 1995. During that time, plaintiff's supervisors approved numerous requests for sick days that had not yet accrued in lieu of using plaintiff's vacation days for absences. Plaintiff's salary increased annually throughout her tenure as EEO manager.

---

[1] The following statement of facts comes from defendants' Local Rule 56.1(a) statement of material facts and accompanying exhibits. Because plaintiff did not submit a response to defendants' statement, those facts are deemed admitted. Local R. 56.1(b). However, plaintiff's omission does not result in an automatic grant of the motion for summary judgment, and this court must still evaluate all facts in the light most favorable to plaintiff. Michas v. Health Cost Controls, Inc., 209 F.3d 687, 689 (7th Cir. 2000). In that vein, this court carefully reviewed the entire record submitted by defendants, including the grievances plaintiff has submitted over the years and their accompanying exhibits. Even having reviewed those documents, this court could find no piece of evidence which supports any of plaintiff's claims.

In 1995 and 1996, the ISBE conducted an agency-wide reorganization. Plaintiff and 47 other managers and supervisors were reassigned from the managerial ranks to professional positions under the collective bargaining unit. Plaintiff had requested that she be transferred to the Teacher Educational Program Approval ("TEPA") section of the Division of Professional Preparation. Plaintiff's request was granted, and she was reassigned to the position of Professional Consultant in the Division of Professional Certification, TEPA section. Plaintiff has worked as a Professional Consultant from 1995 to the present. Because of the reorganization, plaintiff and a large number of other employees did not receive annual evaluations for two to three years. Plaintiff received her first evaluation in the Professional Consultant position in February 1998. As before, the evaluation commented on plaintiff's strengths and identified areas for improvement. Plaintiff's personnel file does not contain any discipline against her during the time she worked in TEPA. While plaintiff was working as a Professional Consultant, plaintiff's supervisors again approved numerous requests for days off work, including giving her sick days which had not yet accrued. While at TEPA, plaintiff's salary remained the same for the first 12 months, and then increased in 1996 and 1997.

In May 1997, the ISBE received a note from plaintiff's doctor indicting the need for accommodations for a condition resulting from injuries plaintiff sustained in a car accident in 1995. The ISBE also received a request from plaintiff that her work station be evaluated, that she receive voice recognition software and computer equipment capable of handling the software and that she be allowed time for training on the software. Upon receiving this information, the ISBE made arrangements for two independent work station evaluations. The ISBE then purchased new equipment and services to accommodate plaintiff's needs. The equipment cost the agency more than $2,800. While the equipment was on order, the ISBE provided plaintiff with a dictaphone.

Plaintiff's supervisor also allowed plaintiff extra time to complete her work and reduced the amount she was required to travel for her job duties, requiring her to travel less than other employees performing the same job duties.

On January 10, 1997, plaintiff filed a grievance complaining of interference in the discharge of her duties, withholding information, disparaging remarks, misuse of state money to sabotage programs designed to fight racial discrimination and to cause plaintiff financial harm, and refusal to respond to plaintiff's requests for accommodation. In particular, plaintiff complained of work being reassigned from her when she took leaves of absence and that her supervisors refused to allow her sufficient time to complete assignments. The grievance also noted instances of what plaintiff perceived as the ISBE not properly responding to instances of racial discrimination. The grievance went through a three-step process and was denied at every step.

In March 1998, plaintiff became part of the Division of Professional Development Redesign because the Division of Professional Preparation split into two separate divisions. The monitoring duties of TEPA were now a part of the Division of Professional Development Redesign. Plaintiff continues to occupy a Professional Consultant position in the new division, and her duties are essentially the same as her duties were in TEPA. Again, plaintiff's evaluations in the new division were generally satisfactory, but identified areas of concern. Plaintiff has not been disciplined in the new division. Plaintiff's new supervisor, Mike Long, granted plaintiff's request for a leave of absence from June 1998 to September 1998 and subsequent extensions in September, November, December, and January. Plaintiff remained on leave until February 15, 1999. Plaintiff's salary has increased every year since she has been in the new division.

All of the individually named defendants in plaintiff's complaint are presently or have been

4

employed by the ISBE.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 106 S. Ct. 2548, 2553 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986).

Under Local Rule 56.1(b)(3), a party opposing a motion filed pursuant to Federal Rule of Civil Procedure 56 shall serve and file a concise response to the movant's statement that shall contain a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. Local R. 56.1(b)(3)(b). All material facts set forth in the defendant's 56.1(a) statement of material facts will be deemed to be admitted unless controverted by the statement of the opposing party. Local R. 56.1(b)(c)(B).

## ANALYSIS

I.  Count I: § 1983 Equal Protection and Due Process Claims

Plaintiff claims in Count I of her complaint that five of the individual defendants, all co-employees of the ISBE, have deprived her of equal protection of the law in violation of the Fourteenth Amendment and 42 U.S.C. § 1983 by discriminating against her on the basis of her race and violating her First Amendment rights. Plaintiff also alleges that she has been deprived of her due process rights under the Fourteenth Amendment. Plaintiff alleges that defendants have acted under color of state law to deprive her of her rights to equal protection and due process by interfering with her ability to carry out the responsibilities of her job, particularly with regard to civil rights and affirmative action, undermining her work, and denying her work-related benefits and opportunities.

A.  Equal Protection Claim

Defendants have moved for summary judgment on the § 1983 equal protection claim in Count I on the basis that plaintiff has presented no evidence that she has suffered an adverse employment action or that similarly situated employees received more favorable treatment. Plaintiff has admitted that no racially derogatory statements were ever made to her by anyone at the ISBE. Accordingly, plaintiff has not offered any direct evidence of illegal motive, and therefore must proceed under the familiar three-step model of McDonnell Douglas Corporation v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973), which applies to racial discrimination claims both under Title VII and § 1983. Pilditch v. Board of Educ. of City of Chicago, 3 F.3d 1113, 1116 (7th Cir. 1993). In order to establish a prima facie case under McDonnell Douglas, plaintiff bears the burden of proving: (1) that she belongs to a protected group; (2) that she performed the job satisfactorily; (3) that she was subjected to an adverse employment action; and (4) that similarly situated employees received more

6

favorable treatment. See Carson v. Bethlehem Steel Corp., 82 F.3d 157, 158 (7th Cir. 1996).

Defendants argue that plaintiff has failed to come forward with evidence that she has suffered a materially adverse change in the "terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2. The Seventh Circuit has noted that, although a materially adverse change in employment conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities, such a change might be indicated by "significantly diminished material responsibilities," Crady v. Liberty Nat'l Bank and Trust Co., 993 F.2d 132 (7th Cir. 1993), or by an employer's functional isolation of an employee. See Collins v. State of Illinois, 830 F.2d 692, 703-04 (7th Cir. 1987); see also Dahm v. Flynn, 60 F.3d 253, 257 (7th Cir. 1994) (noting, in the context of an action commenced under 42 U.S.C. § 1983, that an adverse employment action can result from a materially qualitative change in job responsibilities). "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action." Smart v. Ball State University, 89 F.3d 437, 442 (7th Cir. 1996). "Otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." Id.

Plaintiff has not been discharged, demoted, or disciplined. The closest this record comes to suggesting an adverse employment action against plaintiff is that she received arguably less-than-entirely-positive evaluations and had her responsibilities diminished somewhat. Plaintiff's position has remained the same since 1995, and she has received annual salary increases throughout her tenure at the ISBE. The Seventh Circuit has held that undeserved poor evaluations alone cannot constitute adverse employment action. Smart, 89 F.3d at 442. In contrast, an undeserved poor performance evaluation accompanied by a demotion, or transfer of job responsibilities to the point

7

where the employee's work became the intellectual equivalent of a "dunce cap" could constitute adverse employment action. See id. (citations omitted). The facts of this record demonstrate that plaintiff's job responsibilities have not been transferred away from her to the point of an intellectual equivalent of a "dunce cap." Several projects were transferred from plaintiff while she was on sick leave, but plaintiff retained other projects. The essence of plaintiff's complaint is not that she was not given enough work, but that she was not given enough time in which to do that work. Given plaintiff's own request for additional time in which to perform her work, she cannot now be heard to complain of responsibilities being transferred from her to allow her the additional time she had requested. Accordingly, plaintiff has presented no evidence that she suffered an adverse employment action within the meaning of Title VII or § 1983.

Plaintiff also has not alleged nor presented evidence that any non-African-American similarly situated employees was treated differently. There is no evidence that any white employees who took medical leaves of absence did not have their work reassigned; plaintiff has also presented no evidence that the ISBE did not "withhold information" from or "make disparaging remarks" about white employees who were also working on race discrimination issues. Plaintiff "believes" that the comments concerning her competency were an "expression of their racist beliefs concerning the intellectual and professional abilities of African[-]American people." Such a subjective belief does not create a genuine issue under Rule 56 as to whether race was the motivating factor for the treatment, or as to whether similarly situated non-African-American employees were treated differently. See Jordan v. Summers, 205 F.3d 337, 343 (7th Cir. 2000) ("In total, [plaintiff's] evidence . . . amounts to little more than conclusory statements, indications of opinion or speculation which do not produce a genuine issue for trial under Rule 56(c)."). Accordingly, plaintiff has not

met her burden under either the third or the fourth prong of the McDondald Douglas prima facie case, and thus has not created a genuine dispute that she was discriminated against on the basis of her race.

B. Due Process Claim

Defendants have moved for summary judgment on the due process claim in Count I on the basis that plaintiff has presented no evidence that she was deprived of a property right. This court, having reviewed the record submitted by defendants, finds no evidence of a property right of which plaintiff has been deprived. Plaintiff has not been terminated, demoted, or even formally disciplined. At most, she has had job duties taken from her. However, there is no state or federal right to perform the duties of one's liking. Claims that lack a foundation in state law are too evanescent to count as "property" interests under the Constitution. Miller v. Crystal Lake Park Dist., 47 F.3d 865, 867 (7th Cir. 1995). To have a property interest in a benefit, a person must have more than an abstract need, desire, or unilateral expectation of it. The person must, instead, have a legitimate claim of entitlement to it. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709 (1972). A "legitimate claim of entitlement" is one that is legally enforceable based on statutes, regulations or some equivalent expectancy that is legally enforceable, such as a mutually binding obligation. Miller, 47 F.3d 867. Here, there is nothing in the record to suggest that plaintiff had a statutory or contractual entitlement to her choice of job duties or to being free of the sort of treatment of which she complains, including disparaging remarks and "negative" performance evaluations. Accordingly, plaintiff has not created a genuine dispute that defendants have violated her constitutional rights.

9

## II. Count II: Conspiracy under § 1985(3)

Defendants argue that plaintiff's conspiracy claims are barred under the doctrine of intracorporate immunity. Section 1985(3) prohibits persons from conspiring to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, or to injure any citizen in person or property on account of such support or advocacy. Plaintiff alleges that defendants conspired to punish plaintiff for the exercise of her First Amendment rights in advocating the racial desegregation of schools and to deny her the equal protection of the laws. In <u>Travis v. Gary Community Mental Health Center, Inc.</u>, 921 F.2d 108 (7th Cir. 1990), the Seventh Circuit held that "managers of a corporation jointly pursuing its lawful business do not become "conspirators" when acts within the scope of their employment are said to be discriminatory or retaliatory." <u>Id.</u> at 110. All of the defendants named in Count II of plaintiff's complaint are or were current or former employees of the ISBE, and plaintiff does not allege nor present evidence that any defendant ever "conspired" with any one other than the ISBE or one of its employees. Plaintiff also does not allege or present evidence that any of the employees acted unlawfully or outside the scope of their employment. Accordingly, plaintiff's § 1985 claim is barred by the intracorporate conspiracy doctrine.

## III. Count III: Common Law Conspiracy

Plaintiff also attempts to state a claim for common law conspiracy to deprive her of her constitutional rights against all defendants. The intracorporate conspiracy doctrine applies with equal force to plaintiff's common law conspiracy claim as it does to her § 1985 claim. Again, plaintiff has produced no evidence that defendants ever "conspired" or otherwise worked in concert with anyone who was not or is not presently employed by the ISBE or that any of the defendants was

or is acting outside the scope of his or her employment. For that reason, summary judgment is appropriate on both of plaintiff's conspiracy claims.

IV.  Count IV: Title VII Employment Discrimination

   A.  ISBE

As explained earlier in this opinion, section I.A, plaintiff has failed to state a prima facie case of race discrimination under § 1983 and the Constitution. Because the same standards apply to race discrimination claims under Title VII, Pilditch v. Board of Educ. of City of Chicago, 3 F.3d 1113, 1116 (7th Cir. 1993), plaintiff has also failed to state a claim for race discrimination under Title VII. Accordingly, summary judgment is appropriate for all defendants on plaintiff's race discrimination claim.

   B.  Individual Defendants

Even if plaintiff could establish a prima facie case of race discrimination under Title VII, she cannot state a claim for employment discrimination against any of the individually named defendants in this case because none of them were or are plaintiff's "employer" within the meaning of the statute. All of the individually named defendants in plaintiff's complaint are or were fellow employees and supervisors at the ISBE. Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person." 42 U.S.C. § 2000e(b). The Seventh Circuit has held that Title VII's definition of "employer," which includes an employer's agents, is simply a statutory expression of traditional respondeat superior liability and imposes no individual liability on agents. EEOC v. AIC Security Investigations, Ltd., 55 F.3d 1276, 1281 (7th Cir. 1995). Because an individual who does not otherwise meet the statutory definition of "employer" cannot be held individually liable under Title VII, see Williams

11

v. Banning, 72 F.3d 552, 555 (7th Cir. 1995), the individual defendants named in plaintiff's complaint could not be held liable for any race discrimination claims plaintiff could state. Accordingly, summary judgment is appropriate for all the individually named defendants on plaintiff's Title VII race discrimination claims for the additional reason that they are not and have never been plaintiff's employer within the meaning of the statute.

V.   Count V:   Failure to Accommodate Disability under ADA

   A.   ISBE

The Seventh Circuit recently held that the Eleventh Amendment shields the state and its agencies from being sued in federal court under the ADA by a private litigant such as plaintiff here. See Erickson v. Board of Governors of State Colleges and Universities for Northeastern Illinois University, 207 F.3d 945 (7th Cir. 2000). Accordingly, plaintiff's ADA claims against the ISBE, a state-wide agency of the state of Illinois, are barred.

   B.   Individual Defendants

As noted in Part IV.B of this opinion, individual employees cannot be held liable for employment discrimination under Title VII. Title VII and the ADA use virtually the same definition of "employer," and "[c]ourts routinely apply arguments regarding individual liability to [both] statutes interchangeably." Williams v. Banning, 72 F.3d 552, 553 (7th Cir. 1995); 42 U.S.C. § 12111(5)(A) (ADA). Because individuals who do not otherwise meet the statutory definition of "employer" cannot be held individually liable under the ADA, United States EEOC v. AIC Security Investigations, Ltd., 55 F.3d 1276, 1282 (7th Cir. 1995), summary judgment is appropriate on behalf of the individual defendants on plaintiff's ADA claim because they cannot be held individually liable under the ADA.

## VI. Count VI: Failure to Accommodate Disability under Rehabilitation Act

### A. ISBE

In order to state a claim under the Rehabilitation Act, 29 U.S.C. § 794 et. seq., plaintiff must demonstrate that: (1) she is handicapped under the Act; (2) she is otherwise qualified for the benefit sought; (3) she was discriminated against solely by reason of her handicap; and (4) the program or activity in question receives federal financial assistance. See Grzan v. Charter Hosp. of Northwest Indiana, 104 F.3d 116, 119 (7th Cir. 1997). Here, plaintiff's complaint alleges that defendants have failed to accommodate her disabilities. However, defendants have come forward with substantial evidence that they worked with plaintiff to accommodate her disability by working with experts to reconfigure plaintiff's work space and purchasing equipment and services, including voice-activated software, at a cost of more than $2,800. Plaintiff has not refuted this evidence, nor has she presented any evidence that the accommodations failed or that the ISBE should have done more to accommodate her disability. Plaintiff has also presented no evidence of any adverse employment action within the meaning of the employment discrimination statutes, or that other employees received accommodations which she was denied. For those reasons, plaintiff has not shown that she was discriminated against because of her disability, and therefore has not created a genuine dispute that she was discriminated against on the basis of her disability in violation of the Rehabilitation Act.

### B. Individual Defendants

The Rehabilitation Act bars discrimination on the basis of disability only by programs or activities that receive federal assistance. As such, the ISBE is the only potentially proper defendant named in plaintiff's complaint. The individually named defendants are not federally funded

programs, and therefore plaintiff could not state a claim against them under the Rehabilitation Act even if she could demonstrate that she was discriminated against on the basis of her disability. Accordingly, summary judgment is proper in favor of the individually named defendants for the additional reason that they are not proper defendants under the Rehabilitation Act.

## CONCLUSION

For the reasons stated, defendants' motion for summary judgment is GRANTED. Plaintiff's complaint is dismissed with prejudice in its entirety as to all defendants. All pending motions and previously set dates are moot.

ENTER:

*James F. Holderman*

JAMES F. HOLDERMAN

United States District Judge

DATE: November 15, 2000